that is on advisement. No, I'm sorry, we've got one more matter. I apologize. I'm sorry. I'm sorry. I apologize. Borelli v. Bisignano and Mr. Bose, you're on. Yes. I apologize. Why don't you go higher, Mr. Bose? A little bit, yeah. There you go. Thank you. Keep going. Good morning, Your Honors, and may it please the Court. My name is Christopher Bose, and I represent the plaintiff, Appellant Jason Borelli, in this Social Security action challenging the September of 2022 decision determining that Mr. Borelli magically became disabled on April 28th of 2016. This is an arbitrary onset date, and this Court has previously said that an adjudicator can't pick a date that has no medical significance. The only significance to the date, April 28th, is that it was the first date available to Mr. Borelli when he filed his second claim. Any allegation of onset before that date was precluded by administrative-raised judicata, so that's the only explanation for that date. There's no trauma that happened on that date. There's no medical catastrophe on that date. The evidence in April of 2016 is the same as it was when he applied in 2013. I'm not sure that I'm fully understanding your argument, because our precedent suggests that a contrary decision by another ALJ is not determinative of the soundness of the decision on a different period. So we don't assume that the other ALJ got it right, got it wrong, anything in between. We're just now looking at what the ALJ did in the challenged decision. So I don't know what it matters that another ALJ picked up with finding disability later on. Am I missing something? Yes, I believe you are. And that is to Mr. Borelli, because he doesn't understand how he went from having a medium residual functional capacity April 27th of being disabled the next day. The case of Caron, which is decided by the Commissioner, which I believe, Your Honor, was on the panel, is distinguishable, because in that case, the claimant came to the court on what would have been case number one and, apparently, the last minute pointed at the court of appeals level and said, oh, we have a favorable decision on case number two, so that totally undermines its new immaterial evidence. The court appropriately decided that the decision itself was not new immaterial evidence. So can I ask, if it had been the other way around, if he had prevailed in the first instance and had not been successful in the second, would you be arguing that because of the second one, the first one wasn't appropriate? This case is different, and to answer your question, Your Honor, but also Judge Rodgers' question, this case comes up in a different context, where the appeals counsel explicitly says to the administrative law judge Harrington, consider whether or not you want to reopen this case. So it's not as though it's a separate case, separate and apart from the proceedings, where the proceedings are separated. Here we have an order by the Commissioner's appeals counsel saying... But wasn't it good for your client that they didn't reopen and reconsider the second? Because that one was the favorable one. The appeals counsel directed the judge to make a determination. By our reading of the record, the administrative law judge did reopen the case. Because if you look at the notice of hearing, she says, I'm looking at the decision. I wanted you to show that you're disabled before December 31, 2017. The appeals counsel told the ALJ to develop the record, right? That's what it told them to do. Now, that concerns the views of Dr. Hong, Dr. Vatapalli, and Dr. Ushaskera. I may not have pronounced that correctly. But in any event, did the second ALJ have more information from those judges than the first ALJ? I don't believe so. But at Special Appendix 21, we see that Judge Thomas, the second ALJ, had an MRI from September of 2015, which is within the period of the ALJ's relevant period. We're finding that there was an impingement of the L3 nerve. Okay. So I want to be sure I understand what you're charging as the errors before us. I thought you were faulting the ALJ on remand for not himself securing more information from these three doctors. And that's why I asked, was there more information at the second proceeding, such that that would perhaps lend some weight to your argument? And you're saying no. Are you faulting the ALJ for not getting more information from these three doctors? Yes. What happened was that... So is the answer yes? Yes, we're faulting the ALJ. The ALJ in 2007... I understood the record. Borelli's attorney did attempt to get more information from these doctors. Indeed, that's how the ALJ acted on the remand. He didn't himself issue any orders. He asked counsel to get it. And counsel was unsuccessful and, again, as I understand the record, reported that further efforts would be unproductive because one doctor had retired, two declined to complete statements given how long since they'd seen Mr. Borelli. And I'm asking you, what error did the judge commit by relying on counsel's efforts rather than initiating any of his own? The judge at no point in 2016 at the first hearing made any effort to develop the record, and in 2022 made no effort to develop the record. Well, it's a pretty extensive record. I mean, but he was told to be about getting more information from these doctors, and he attempted to do it through counsel. So I'm asking you whether that is somehow an error that we have to take notice of. The court should take notice of the fact that this administrative law judge never saw a medical source statement from the treating source. We're still under the treating physician rule under this case. Did nothing in 2016. He said to counsel, get information from these doctors. That strikes me as a reasonable thing for a judge to do. You have a represented party in front of you. The counsel apparently did make an effort to get it and comes back unsuccessful and says to the judge further efforts would be unproductive. What is the judge supposed to do at that point? Help me out. The problem was, and maybe it's a moot point, the attorney below argued that the administrative law judge could have sent a subpoena to these doctors to get their attention. Unfortunately, one of them had retired by 2022. It took three years for the judge to get to this case. So there was a lot of delay, and we think it was attributable to the administrative law judge. If I could just quickly get to the issue of substantial evidence, because I think this is perhaps more critical, and the court could understand our point here. Substantial evidence here, the administrative law judge, Judge Harrington, never considered the fact that Mr. Borelli had acquired an opiate dependency, was depressed as a result, was having withdrawal. According, when he was having withdrawal, his wife is saying that you're very agitated and cranky. And we see in September of 2016, Mr. Borelli says, I'm addicted to opiates. I can't function with them. I can't function without them. And he's going through this withdrawal, and he has to seek opiate rehabilitation. He goes on Suboxone. And the judge, if you read the judge's decision, and if you read the commissioner's brief, the commissioner's brief says that Mr. Borelli's condition was controlled without significant side effects. That's just not true. Getting an opioid dependency is not, is a significant side effect. We can see that Mr. Borelli protested taking the 12-hour OxyContin, which didn't work for 12 hours, and he was having withdrawal before the 12 hours, and that was the problem that he eventually painted himself into a corner with. Not on his own. He never drank. He never used any illicit drugs. That was accommodated, though, in the second, right? I mean, I think part of the issue is the particular time period that we're talking about. The question we have is whether or not there was substantial evidence for the particular time period. Another ALJ decided later that he was entitled to a favorable ruling for all of the reasons that you just said. The benefit of hindsight at that point, he has, as of September of 2016, Mr. Borelli throws his hands up and says, I'm addicted to opioids. This did not happen overnight. We can see in 2013, he's challenging Dr. Levin. He's saying, I don't want the 12-hour medication. At the hearing in January of 2016, Mr. Borelli is telling the judge face-to-face that I have to get up at 4.30 in the morning to take the long-acting medication. I have to take the short-acting narcotic at that time because the long-acting won't kick in in time to let me go back to sleep, and then he has to go up and repeat the same thing all over. So he was given, you know, the idea that he was controlled on opioid pain medication without significant side effects is laughable. And yet the administrative law judge's decision, that rests on that principle. Well, but weren't there parts where the doctors indicated that they presented no serious side effects, that these drugs had done that? And we do have a lenient substantial evidence standard. Is that right? He says that you have to read carefully because the doctors say he's not complaining of side effects, and that comes up in the record. He says the increasing dosages that you're asking me to take, right, the dosages are increasing because he's becoming tolerant to the medication. Increasing dosages are making me tired. He says that repeatedly throughout the record, and he challenges Dr. Levin. You can see it in the file repeatedly where he's complaining that the medications make him tired. He says that he can't. I don't think anybody would dispute that we have contradicting evidence that presents in both ways. And the question is, why is the ALJ's particular determination for this particular point in time not supported by substantial evidence? So why don't you look at what the ALJ found and said why that's not enough? She said his condition was controlled with conservative measures and controlled on opioid pain medication, which improved function, decreased pain, and was without significant side effects. The regulation at 404.15.29 directs the ALJ to take into account side effects. And he says that oxycodone causes drowsiness. The tizanidine causes dizziness. This is at page 353 of the record. By April of 2014, he's saying I'm constantly taking pain pills and they don't work. That's at page 360. That's right. Didn't they inform the doctors that certain injections decreased pain by 50%? Wasn't that part of the record? And that the finding of pain wasn't supported by objective medical evidence? The issue of the MRI, I'm glad you brought that up. The MRI in December of 2013 does show impingement of the L3 nerve root, which is a condition which could cause the pain that he complained of. But at that point, after looking at the second MRI in 2013, December of 2013, Dr. Wedges-Scarra says to him, well, there's no surgical resolution to your condition. You have to keep doing these epidurals. You have to keep doing the opioid medication. But there's no surgical correction. I think the administrative law judge read the second. The second MRI was produced initially because Dr. Wedges-Scarra didn't think that the annular tear on the March 2013 MRI justified his complaints of pain. So he wanted more. Okay. We'll hear from you on rebuttal, sir. Thank you. Okay. Thank you very much, members. You can lower it if you want. I'm good. Thank you. All right. May it please the Court. The record before the ALJ for the period that was before her to adjudicate supports her decision that Mr. Borrelli was able to perform medium work, which in turn allowed him to perform his past relevant work as a security guard as he actually performed sitting at a desk, signing people in and out, while performing rounds every few hours. As this Court is aware, this substantial evidence standard is very deferential and only requires evidence that a reasonable mind may accept to support a conclusion. Here, the treatment record provides substantial evidence to support the ALJ's decision. Okay. The record shows that he, in his own words, was dependent on opiates and could not function without them. What are we supposed to do with that? The record shows in 2016 that he was diagnosed with an opioid dependence. The records through April 2016, which are at issue here, show that he did take opioid medication and that that medication was helpful, along with injections, in increasing his functioning and reducing his pain. The records also do not show... Right, but that doesn't really answer the question, right? Just because the opioids reduce his pain doesn't mean that the opioids don't preclude him from being able to do any work, right? Those two can live together. Understood, Your Honor. However, the record doesn't substantiate the claim that that opioid medication made him unable to work. For the most part, he reported to his treating sources that he did not have side effects of medication and that he was taking that opioid medication as prescribed. It was reasonable for the ALJ to rely on the records in front of her for that period to conclude that the opioid pain medication did not preclude him from performing his past relevant work. What about the limitations like his gait? That is one of the examination results that we're limiting. However, other examination results showed full musculoskeletal strength, that he had a normal heel and toe walk, intact reflexes, sensation was intact to light touch, and he had negative straight leg rising test. In addition, as we discussed in our brief, Dr. Widjuskera ran an MRI in 2013, which he did not believe showed the origin of his pain, and a later MRI, which he ordered to see if there was any change, showed essentially no change according to the radiologist who read it. EMG testing showed no evidence of radiculopathy. Looking at the evidence as a whole, it was reasonable for the ALJ to conclude that he was able to perform the RFC for medium work with some limitations regarding postural movements and environmental limitations. In addition, there are two opinions in the record from state agency medical consultants who reviewed the records available to them, and the first one concluded that Mr. Borrelli could perform light work and the second, medium work. So taking that evidence as a whole, the ALJ reasonably found that Mr. Borrelli could perform medium level work. That record was also sufficient for the ALJ to make an informed decision, and at the hearing, the ALJ explored with Mr. Borrelli's counsel whether his treating sources were willing to provide opinions, and Mr. Borrelli's counsel explained that he had contacted them, but they were either unwilling or unable to provide them. With respect to the two who were unwilling, Dr. Vodopalli and Vijaskera, they had actually been contacted earlier during the relevant period and had refused them as well. So at that point, it wasn't a question of timing. It was simply not the kind of opinion that they were willing to provide. Just one last point on that. Although we didn't brief the issue of the subpoena, I would like to note that Mr. Borrelli's counsel had agreed with the ALJ that there was nothing that the ALJ could do to force the doctors to provide those opinions. So what does that look like for us doctrinally? Is that a futility argument? Is it a forfeiture or abandonment argument? What do we do about the attorney agreeing that pursuing these treatment providers would be fruitless? How should we understand that as a doctrinal matter? Well, Your Honor, first of all, going back to the appeals counsel's order. The appeals counsel ordered the ALJ to develop these records. The ALJ did it by asking counsel to reach out. So to that extent, the ALJ has done their duty. So you're saying it's a satisfaction? The fact that you're saying we should understand it not as a matter of futility or as a matter of abandonment, but the ALJ satisfied the obligation? Yes, Your Honor. And as a practical matter, there was nothing more that could be done on top of that. May I ask so that I'm clear on the record? The appeals counsel tells the ALJ to develop the record. He does and he makes the ruling that's now at issue. It went back to the appeals counsel before it came to us, right? That's correct, Your Honor. And the appeals counsel did not find that their order had not been satisfactorily complied with? Or was it not an issue? Or what happened at the appeals counsel on this question? The appeals counsel did not find any reason to review the ALJ's decision. Okay. Thank you. Finally, regarding the argument about the subsequent decision, again, Mr. Borrelli's counsel agreed that the ALJ should not reopen the subsequent decision. In fact, when the ALJ said to Mr. Borrelli's counsel, the claimant was found to be disabled and is receiving disability benefits as of April 28, 2016, and we're not going to disrupt that subsequent period. Mr. Borrelli's counsel replied, very good, thank you, understanding that it was to Mr. Borrelli's benefit that that subsequent period not be reopened. This court has made it clear that the fact that a different ALJ may have reached a different conclusion about a subsequent period is not probative. And these two decisions are not a decision about April 27, 2016 versus April 27, 2018. They are actually two distinct periods of time. One is a four-and-a-half-year period beginning on December 31, 2011 and ending on April 27, 2016, whereas the period that was before the next ALJ who found Mr. Borrelli disabled was from April 28, 2016 to September 24, 2019, a three-year period. So we disagree that this is a matter of finding Mr. Borrelli disabled overnight. These are two separate periods of time spanning several years. Here, the ALJ's decision is supported by substantial evidence in the record applicable to the period before her, and therefore we submit it should be affirmed. Unless the court has any further questions, we rest on our breath. Thank you. Judge Raji, to answer the question of whether or not the case went back to the UPL's counsel after September 22, 2022, it did not. A complaint was filed in the district court on December 29, 2022. I don't believe that there was an intervening appeal to UPL's counsel, so UPL's counsel never had a chance to look at that. This is the case that keeps giving. At the time of Judge Thomas's fully favorable decision on September 24, 2019, the prior decision that had been the basis of administrative res judicata was now vacated. So in theory, if things had been done accurately, he could have been told, well, it's no longer a final decision, although UPL's counsel doesn't say that in its decision. Well, when I asked you about this when you were arguing initially before us, I thought you came close to abandoning the argument about the ALJ developing the record. Did I misunderstand you? Yes and no. I'm just so disturbed by the administrative law judge's repeated failures here. She doesn't care to develop the record. We know that because in April of 2014, Mr. Borrelli files a request for hearing. And he says, I'm treated by Dr. Hong, Florida Poly, and Widgesterra. That's the argument that got made to the appeals counsel. The appeals counsel ordered the ALJ to develop the record. And so I'm asking you, when an ALJ does that by asking counsel to get the information, is that enough? Or if not, what more do you say the ALJ was obliged to do by law? I think the attorney has a freestanding obligation to develop the record on behalf of the client. Under the statute and the regulations, the commissioner has that duty. They can't delegate that duty to counsel, in my opinion. I wanted to point out that— So what happens when the ALJ, when the counsel says it would be fruitless to do more? Is that conceding? Is that abandoning the argument? Is that an assessment of futility? What is that? The regulations provide the answer to that question, which is they're supposed to make a reasonable effort to secure a medical source statement from the treating source, unless they have information that to do so would be fruitless. So, yes, upon being told that in 2022, almost three years after the appeals counsel remand order, the administrative law judge did nothing. I wanted to point out that she did nothing. At the time Mr. Borrelli appeared in July of 2015, she basically says, well, why didn't you give us the names and addresses of the doctors who were treating you? We could have developed the record. But he had, in fact, done that. It's very clear in the record that he had done everything that he needed to do to leverage the resources of the agency to get the medical source statement. But they didn't do it. And the judge kind of braided him up for not doing it in July of 2015. That's at page 136. See, my concern is that if we were to find error on that basis and this were to go back down to the agency, is there really anything the ALJ could do at this point to secure any more information from these doctors? If the ALJ could consider calling a medical expert instead of looking at the MRI evidence herself. But if the doctors are retired and they're no longer available, we can't, you can't force them to do something they're not obligated to do. Okay. Thank you so much. Thank you very much. So we'll take the case under advisement. This concludes the argument, our portion of the argument calendar today. We do have one case on submission. So I'm going to note that for the record. It's Foxmore, Cole versus Foxmore. That's 24-3122. I'd like to thank our court security officer for keeping things safe and our court deputy for having things move along quickly.